UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| **ROBERT WARSHAWER** and **KIM WARSHAWER**, a married couple; and **GLENN BUTLER**, Shareholders' Agent for the former shareholders of Black Rock Cable, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> **RICK TARNUTZER**, an individual; and, **NANCY TARNUTZER**, an individual, <br><br> Defendants. | CAUSE NO.: 14-1042 <br><br> **DECLARATION OF RICK TARNUTZER** |

I, Rick Tarnutzer, hereby solemnly declare that the following is true to the best of my knowledge, information, and belief:

1. I am a resident of Newport Beach, California.

2. In 2007, my sister, Kimberly Warshawer, was living in Bellingham, Washington with her husband Robert Warshawer ("Bob"). Kimberly came to Newport Beach to visit with friends and family sometime in May or June 2007.

3. During her stay, she revealed that her and Bob's company, Black Rock Cable, was in deep financial trouble. The company was insolvent and could not continue its day-to-day operations; neither could it afford any further expansion. The company's lenders were unwilling to extend further credit on Kimberly and Bob's personal

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

guarantees. Their boat and home were also in jeopardy, as they had been used as collateral and the loan value was already too high on both.

4. I knew that Bob had been successful in business before. Therefore, I believed that with an infusion of capital, Bob might be able to make Black Rock Cable a success. Without them having any collateral, there was no reason to make a loan. Therefore, I decided to invest in the company. Not only did investing allow me to help family, it also created the possibility of seeing a return on my money if Bob was able to make Black Rock Cable another one of his successes.

5. Accordingly, on June 6, 2007, I wrote a check to Kimberly and Bob from my Newport Beach bank account for $100,000, investing in Black Rock Cable, Inc. A copy is attached hereto as **Exhibit A**. I mailed the check to them the next day via FedEx.

6. I wrote a notation on the check, indicating that it was for "BLACK ROCK CABLE INV." The "INV." stands for investment. I also included a note with the check, explaining that the money was an investment in Black Rock Cable.

7. Upon receipt of the check, Bob called and thanked me. Bob told me that I was "his angel," and that I "would not regret this investment." My wife was present for the telephone call and overheard him say this.

8. Bob also said that my investment in Black Rock Cable would be treated as a founder's and/or preferred stock position, and accordingly, I would own a substantial stake in the company. He deposited the investment check on June 8, 2007.

9. Neither Bob nor Kimberly ever questioned the language "BLACK ROCK CABLE INV." on the check. They did NOT object to the explanation that the money was an investment (i.e. "INV."). Neither did they tell me the $100,000 was not an investment. In fact, it was not until June 2014, that Bob and Kimberly first characterized my $100,000 investment check as a loan.

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

10. Earlier in 2007, my mother (Nancy Tarnutzer) had also sent a check to the Warshawers for $100,000. She wrote and mailed a check from her personal Wells Fargo bank account in Newport Beach around February 28, 2007. The check cleared from her bank account on March 6, 2007, exactly three months before Kimberly and Bob cashed my investment check. A copy is attached hereto as **Exhibit B.**

11. After making my investment, I asked Bob to send me the financial records of the company on several occasions, so I could monitor my investment. Yet, Bob would evade all my requests.

12. Finally, in 2010, I asked Nancy to obtain the company's financial records on my behalf. She was able to obtain a copy of the, then current, records from Bob during a visit to Bellingham, which she immediately gave to me. These documents confirmed that my investment had entered the company and showed that Black Rock Cable was doing well again.

13. On November 30, 2012, Kimberly and Bob sold Black Rock Cable to Wavedivision for $50,000,000. Almost all of the sale proceeds went directly to Kimberly and Bob. They purchased a home in Newport the next month, a home that Nancy currently pays monthly rent to the Warshawers to reside in. I did not receive anything. In fact, neither of them even told me about the sale. I learned the basic details of the sale through a press release in the Bellingham Herald around January 10, 2013.

14. After waiting months for Bob to contact me regarding the sale details and return of my investment, I then tried for over eight months in writing to obtain details and records of the sale and payment for my investment in Black Rock Cable from Bob. Bob refused. Instead, he responded that he had never received anything from me, had no arrangements with me, and that he owed me nothing. Then in June 2014, he claimed that my investment in June 2007 had been a loan from my mother for

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

1 | $100,000, and that the alleged "loan" only had a value of $375,000 on the day
2 | Black Rock Cable was sold—November 30, 2012.

15. Bob and Kimberly's contention is FALSE. I wrote my investment check (**Exhibit A**) exactly three months—June 6, 2007—after Nancy's February 2007 check cleared on March 6, 2007. Although the checking account from which the June 2007 check was written was owned jointly by Nancy and me, the investment was entirely at my own discretion and was made solely by me.

16. Now, Bob and Kimberly attempt to confuse the two checks (**Exhibits A** and **B**) and merge them into one. They received two separate checks for $100,000: one is my investment check in June 2007, and the second is the loan from Nancy in February 2007. One has absolutely nothing to do with the other. (Note: $100,000 is the same value as Bob's son, Jason Warshawer's, loan to them in May 2007. A copy of this loan agreement is attached hereto as **Exhibit C**.)

17. Furthermore, Bob never informed Nancy or me that our investment had been liquidated, diluted, or converted into anything other than what he and I agreed upon in June 2007, and then supported in 2010 by the financials he prepared, reviewed, and provided—that is, until I asked for the return of my investment.

18. They attempted to confuse Nancy about the origin and purpose of these checks for months. They even came up with a sham loan agreement, dated September 28, 2007, that was <u>authored and signed by Bob alone</u>. Neither Nancy nor I had seen a copy of this supposed agreement until it was produced by Bob's attorney in June 2014. A copy is attached hereto as **Exhibit D**. The agreement was clearly meant to cheat Nancy and me and has absolutely no reflection of the truth, nor do they reference the clearing dates (March and June 2007) for either check. Instead, Bob references an alleged $100,000 loan made, in an unspecified form of payment, on Sep-

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 Fifth Avenue, Suite 4600
Seattle, Washington 98104
206.903.0504

tember 28, 2007. Many months after actually receiving and cashing the March and June's combined $200,000.

19. Nancy is 74 years old and resides in Newport Beach. She suffered a major stroke on June 3, 2011, which paralyzed the entire left side of her body, leaving her without the ability to move, speak, swallow, or eat.

20. She has largely recovered. However, any stress will adversely affect her recovery and could cause another stroke. This is something the Kimberly and Bob are both well aware of but continue to disregard, despite the severe consequences that linger for her.

21. Nancy also suffered a fall in January 2013 and again in April 2014, sustaining fractures form both falls. At present, she is waiting on a surgery date for her foot, which will need to be re-broken and then properly set. She will be in a cast and require rehabilitation.

22. Given my mother's medical status, any involvement in this litigation will cause her undue stress. She should not travel outside of Orange County, as this will increase her stress and anxiety issues, putting her at extreme risk for another major health mishap. Further, she would be away from her doctors.

23. My long-time attorney, Kent Snyder, will be a witness to these facts. He practices law in Irvine, California.

***I declare under penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct.***

EXECUTED in Newport Beach, California this 16th day of July, 2014.

By: _____
Rick Tarnutzer

# CERTIFICATE OF SERVICE

I hereby certify that I caused service of the foregoing pleading on the parties, and in the manners listed below, on July 16, 2014.

**PARTY:** Randall Beighle
*Attorney for Plaintiff Glenn Butler*
LANE POWELL, P.C.
1420 Fifth Avenue, Suite 4200
P.O. Box 91302
Seattle, WA 98111-9402
**MANNER OF SERVICE:** First Class Mail

**PARTY:** Spencer Hall
*Attorney for Plaintiffs Robert and Kim Warshawer*
HALL ZANZIG CLAFLIN MCEACHERN, PLLC
1200 Fifth Avenue, Suite 1414
Seattle, WA 98101
**MANNER OF SERVICE:** First Class Mail

DATED this 16th day of July, 2014 in Seattle, Washington.

THE SULLIVAN LAW FIRM

By: /s/ Maggie Nicholson
Maggie Mae Nicholson
Legal Assistant

DECLARATION OF RICK TARNUTZER - 6 OF 6

THE SULLIVAN LAW FIRM
K.Sullivan@SullivanLawFirm.org
701 FIFTH AVENUE, SUITE 4600
SEATTLE, WASHINGTON 98104
206.903.0504