UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT WARSHAWER and KIM WARSHAWER, a married couple; GLENN BUTLER, Shareholder's Agent or the former shareholders of Black Rock Cable, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> RICK TARNUTZER, an individual; NANCY TARNUTZER, and individual, <br><br> Defendants. | CASE NO. C14-1042 RSM <br><br> ORDER GRANTING GLENN BUTLER'S MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

This matter comes before the Court on Plaintiff Glenn Butler's Motion for Summary Judgment on Rick Tarnutzer's Ownership Claim In Black Rock Cable, Inc.  Dkt. #46.[1] Through this motion, Mr. Butler seeks an Order: 1) declaring that Rick Tarnutzer held no ownership interest in Black Rock at the time of the Black Rock Merger; 2) dismissing with prejudice all claims by Rick Tarnutzer against the former Black Rock shareholders and against the $3 million in Black Rock Merger proceeds in escrow; and 3) authorizing the disbursement of the remaining $3 million in Black Rock Merger proceeds to the Black Rock shareholders. *Id.*  Defendant Rick Tarnutzer opposes the motion, arguing that the motion should be denied

---

[1] Plaintiffs Robert and Kim Warshawer join in this motion.  Dkt. #57.

ORDER
PAGE - 1

because Plaintiff has misconstrued the applicable corporate law and because Black Rock is liable for violations of Washington State's securities fraud laws. Dkt. #58 at 2. For the reasons set forth below, the Court disagrees with Defendant Tarnutzer and GRANTS Mr. Butler's motion for summary judgment.

## II. BACKGROUND

As noted in the Court's previous Orders in this matter, this case arises from the sale of Black Rock Cable ("Black Rock") and questions surrounding whether certain payments from Defendants to Plaintiffs prior to the sale were loans, gifts or investments into Black Rock. Dkt. #1. The instant motion pertains to Defendant Rick Tarnutzer's alleged ownership interest in Black Rock.[2]

Black Rock was incorporated in Nevada but operated exclusively in Washington, with its headquarters and principal place of business in Bellingham, WA. Dkt. #49 at ¶ 3. Although Black Rock began as a cable TV provider, the company abandoned that aspect of its business in 2002. *Id.* at ¶ 4. By 2003, Black Rock's business was based on building, owning and operating its own fiber optic network in Bellingham, WA. *Id.* Between 2004 and 2006, Black Rock expanded into Whatcom County, WA, Skagit County, WA, and Snohomish County, WA. *Id.*

As Black Rock rapidly expanded, it funded that expansion with its own revenue and through a line of credit at a local bank. *Id.* at ¶ 5. In 2007, Black Rock began exploring alternative ways of financing. *Id.* at ¶ 6. In September 2007, Plaintiff Robert Warshawer, who was also a shareholder and member of the Board of Directors of Black Rock, personally loaned

---

[2] In resolving this motion, the Court primarily relies on the facts pertaining to Black Rock as set forth in Plaintiff's motion and supported by Declarations and documentary evidence, as Defendant Tarnutzer has failed to either set forth any factual background of his own or dispute those facts in his opposition. *See* Dkt. #58.

ORDER
PAGE - 2

the company $700,000. *Id.* at ¶ 7. Mr. Warshawer raised that money by borrowing it from family members, including Defendants Nancy and Rick Tarnutzer. *Id.*

According to Defendants, in May or June of 2007, Plaintiff Kim Warshawer (who is Defendant Nancy Tarnutzer's daughter and Defendant Rick Tarnutzer's sister) was visiting in California and revealed to Mr. Tarnutzer that Black Rock was in serious financial trouble. Dkt. #6 at ¶¶ 2-3. Mr. Tarnutzer, believing that his sister's husband would be successful in turning the business around, decided to invest in Black Rock. *Id.* at ¶ 4-5. Accordingly, he sent a check to Plaintiffs in the amount of $100,000, marking the check with the notation "Black Rock Cable Inv." *Id.* at 5-6 and Ex. A. Mr. Tarnutzer asserts that the notation "Inv." reflected the word "investment." He further asserts that he provided a note with the check stating that it was an investment. *Id.* at ¶ 6. Mr. Warshawer subsequently cashed the check. Plaintiffs characterize the payment as a loan that they have attempted to repay, asserting that Mr. Tarnutzer never directly invested in Black Rock. Dkt. #10 at ¶ 4.

Black Rock followed all corporate formalities with respect to the $700,000 loan from Mr. Warshawer, including obtaining approval of the loan by the non-interested Board members and adopting a written Board resolution approving the loan in October 2007. Dkt. #49 at ¶ 9 and Ex. A.

From 2007 to 2012, Black Rock continued to operate successfully. *Id.* at ¶ 10. In November of 2012, the Black Rock shareholders approved a merger between Black Rock and WHD Black Rock, LLC ("WDHBR"), and the merger closed. *Id.* The Black Rock shareholders received approximately $30 million in Merger proceeds at closing. Dkt. #48 at ¶ 3. Since then, the shareholders have received approximately $5 million in additional distribution of merger proceeds. *Id.*

ORDER
PAGE - 3

In November of 2013, after learning of the sale, Mr. Tarnutzer attempted to obtain a return on his $100,000 "investment," alleging that he was owed approximately $5 million. Dkts. #13, #18, Ex. G and #49 at ¶ 11 and Ex. B. When his efforts to collect the money were unsuccessful, his attorney wrote a letter to WDHBR's parent company, Wavedivision, providing notice of the dispute. Dkt. #18, Ex. G. Wavedivision has since held more than $3 million in escrow from distribution to Black Rock pending resolution of the dispute. Dkt. #10 at ¶ 9.

On June 6, 2014, Mr. Tarnutzer filed a lawsuit against the Warshawers, Black Rock Cable and Wavedivision in Orange County Superior Court in California. Dkt. #5, Ex. B. The same day, Robert Warshawer filed the instant lawsuit in Washington, in Whatcom County Superior Court, against Rick Tarnutzer and Nancy Tarnutzer. Dkt. #5, Ex. C. The Washington case was subsequently removed to this Court. Dkt. #1. The Tarnutzer Defendants then moved for a transfer to the Central District of California for consolidation with their "first-filed" case. Dkt. #4. This Court deferred the motion to transfer, and stayed this case pending further proceedings in California. Dkt. #8. On November 10, 2014, the parties notified this Court that the California action had been dismissed, and asked the Court to lift the stay and allow the matter to proceed. Dkt. #21. The Court did so on November 25, 2014. Dkt. #25.

Mr. Tarnutzer has since asserted a Counterclaim against Black Rock, alleging:

13. After receipt of the $100,000 investment check, in June 2007, Robert Warshawer telephonically contacted Mr. Tarnutzer and thanked him for the investment. During this telephone conversation Mr. Tarnutzer and Robert Warshawer, on behalf of himself, his wife and Black Rock, discussed and agreed that Mr. Tarnutzer's investment would have the status of a founders/preferred stock position so that his investment would be "on par" with the Warshawers' shares, and would not be diluted.

ORDER
PAGE - 4

14. Mr. Tarnutzer's $100,000 investment represented a substantial interest in Black Rock, based on the Warshawers' representations.

15. Mr. Tarnutzer's $100,000 investment in Black Rock was deposited by the Warshawers into Black Rock's bank account and was used for working capital of Black Rock from June 2007 and thereafter.

16. Subsequent to Mr. Tarnutzer's investment, Mr. Tarnutzer was and is unaware of the identities of any other shareholders, if any, other than himself and Robert Warshawer and/or Kimberly Warshawer.

17. After Mr. Tarnutzer's $100,000 investment in Black Rock, and as a result of that investment, the financial situation of Black Rock improved dramatically from 2007-2012. But for his investment in Black Rock, Black Rock risked insolvency in 2007.

18. At all times after his investment, Mr. Tarnutzer believed he had a substantial ownership interest in Black Rock. Although he never received a physical share certificate for his investment, he was never concerned about that fact because the investment was in his sister and brother-in-law's company, and because he had received a written accounting in 2010 prepared by Robert Warshawer himself, and oral updates as to the performance of Black Rock.

19. Neither the Warshawers or Black Rock ever advised Mr. Tarnutzer that he was not considered to be a shareholder of Black Rock on the terms stated, or otherwise.

20. Unbeknownst to Mr. Tarnutzer and without discussing it with Mr. Tarnutzer, in late 2012, Robert Warshawer, Kimberly Warshawer and/or Black Rock entered into a written agreement with OH WDH to merge with Black Rock.

21. OH WDH agreed to pay to Robert Warshawer the sum of Fifty Million Dollars ($50,000,000) for 100% of Black Rock, of which Mr. Tarnutzer owned a substantial interest.

22. The merger of Black Rock into WDH Black Rock, LLC or WDH HOLDCO, LLC closed escrow in or about November 2012. A portion of the purchase price ($3,000,000) was deferred and retained by OH WDH HOLDCO LLC or WDH Black Rock, Inc. until a future date and/or event. This sum of $3,000,000 remains in escrow.

23. Mr. Tarnutzer as a shareholder, was a member of the class to be benefitted by the merger of Black Rock into WDH Black Rock, LLC,

>       or OH WDH HOLDCO LLC and is a beneficiary under the Warshawers' Black Rock/OH WDH agreement.
>
> 24. Despite his substantial ownership interest in Black Rock, Mr. Tarnutzer did not receive advance notice of the merger of Black Rock. Likewise, Mr. Tarnutzer did not receive any portion of the $50,000,000 sales proceeds derived by Warshawers from the sale of Mr. Tarnutzer's substantial interest in Black Rock.

Dkt. #37 at ¶ ¶ 13-24.

Pursuant to the Black Rock Merger documents, the former Black Rock shareholders appointed Plaintiff Glenn Butler as their Shareholders' Agent to protect their interests in this litigation. Dkt. #48 at ¶ 2 and Ex. A. Mr. Butler now moves for summary judgment on their behalf.

### III. DISCUSSION

**A. Standard of Review**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (*citing Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)). Material facts are those which might affect the outcome of the suit under governing law. *Anderson,* 477 U.S. at 248.

The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994). However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v.*

*Catrett,* 477 U.S. 317, 323 (1986). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 251.

### B. Mr. Tarnutzer's Status

Both parties agree that Nevada substantive law applies to the instant matter because this Court has diversity jurisdiction over the case and Black Rock was a Nevada corporation. Dkts. #46 at 4 and #58 at 2. Under Nevada law, any issuance of stock requires approval by a corporation's Board of Directors. *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178 (Nev. 2006) (citing N.R.S. 78.120(1)). Mr. Butler argues that the Board did not do so in this case, and there are no documents to the contrary.

The record supports Mr. Butler's argument. The list of shareholders provided to WDHBR with the Black Rock Merger Agreement as of November 2012 does not include Mr. Tarnutzer. Dkt. #49, Ex. E. The Black Rock Stock and Signature Register as of the date of the Black Rock Merger does not include Mr. Tarnutzer. *Id.*, Ex. F. Likewise, there is no evidence that the Black Rock Board of Directors was ever asked to approve (and did not ever approve) the issuance of any Black Rock shares to Mr. Tarnutzer; no Board Meeting Minutes reflect any approval to issue stock to Mr. Tarnutzer; Mr. Tarnutzer's name does not appear on any Black Rock corporate documents or stock registry; and at least one Board member had never even heard of Mr. Tarnutzer. Dkts. #49 at ¶¶ 15 and 17-18 and Exs. E, F and H; and #47 at ¶¶ 3-5. There is no evidence that the Board of Directors ever authorized the issuance or transfer of any Black Rock stock to Mr. Tarnutzer.

Mr. Tarnutzer argues that shares may be issued without a physical stock certificate. Dkt. #58 at 2-4. That may be true, however Mr. Tarnutzer fails to demonstrate that any shares

were issued or approved by the Board by physical certificate or otherwise. In order to claim an ownership interest in Black Rock, Mr. Tarnutzer must demonstrate that the Board of Directors approved the issuance of stock to him. No Board documents support such a transfer. While Mr. Tarnutzer argues that the Board ratified such a transfer by signing a Unanimous Written Consent to Resolutions of the Shareholders and Board of Directors in 2007 and 2008, the Written Consent does not support his position. The Written Consents do not reference Mr. Tarnutzer or the issuance of any stock to him. *See* Dkt. #49, Ex. C. Likewise, nothing in the documents indicate that the Board ever accepted the $100,000 "investment" check that was written to Mr. Warshawer, not Black Rock. *Id.*

Mr. Tarnutzer also spends much of his brief asserting that Mr. Warshawer had apparent and actual authority to issue shares on behalf of the corporation. Dkt. #58 at 7-8. This argument confuses Mr. Warshawer's position as a Board member with the fact that he is also a shareholder. The corporation and its shareholders are distinct entities, and Nevada treats them as such. *Brown v. Kinross Gold U.S.A., Inc.*, 531 F. Supp.2d 1234, 1241 (D. Nev. 2008).

Finally, Mr. Tarnutzer's argument that his security fraud claim precludes summary judgment is to no avail. As an initial matter, Mr. Tarnutzer has not pleaded any securities fraud claim against Black Rock. *See* Dkt. #37. More importantly, he cannot do so now. The surviving entity of the Black Rock Merger is WDHBR and any claim against Black Rock should have been asserted against WDHBR. Mr. Tarnutzer did not do so, and WDHBR has since been dismissed from this case with prejudice. Dkt. #45.

For all of these reasons, the Court finds that Mr. Tarnutzer has failed to demonstrate a genuine dispute as to any material fact that would preclude summary judgment in favor of the Shareholders. Accordingly, Plaintiff's motion is granted.

## IV.   CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1. Plaintiff Glenn Butler's Motion for Summary Judgment (Dkt. #46) is GRANTED for the reasons discussed above.

2. Defendants Rick Tarnutzer and Nancy Tarnutzer were not shareholders of Black Rock Cable, Inc. ("Black Rock") when Black Rock merged with WDH Black Rock, Inc. ("WDHBR") in November 2012 (the "Black Rock Merger").

3. All claims against the former Black Rock shareholders, including any counterclaims by Rick or Nancy Tarnutzer asserted against Plaintiff Glenn Butler as Shareholders' Agent for the former Black Rock shareholders in this litigation, are DISMISSED with prejudice.

4. All claims by Rick or Nancy Tarnutzer against the $3 million of Black Rock Merger proceeds remaining in escrow are DISMISSED with prejudice.

5. The disbursement of the remaining $3 million in Black Rock Merger proceeds out of escrow to the Black Rock shareholders based on their proportionate ownership share of those proceeds under the Black Rock Merger agreement is hereby AUTHORIZED.

DATED this 12th day of June 2015.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE