UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROBERT WARSHAWER and KIM WARSHAWER, a married couple; GLENN BUTLER, Shareholder's Agent or the former shareholders of Black Rock Cable, Inc., <br><br> Plaintiffs, <br><br> v. <br><br> RICK TARNUTZER, an individual; NANCY TARNUTZER, and individual, <br><br> Defendants. | CASE NO. C14-1042 RSM <br><br> ORDER GRANTING DEFENDANTS' MOTION TO DISMISS |

## I. INTRODUCTION

This matter comes before the Court on Defendants' Motion to Dismiss for lack of subject matter jurisdiction and for mootness. Dkt. #124. Defendants argue that due to the Court's recent Order dismissing all of their Counterclaims with prejudice, there is no longer a live controversy between the parties, and therefore this Court no longer has jurisdiction over the matter. *Id.* Plaintiffs oppose the motion, arguing that their remaining claims for declaratory judgment have not been rendered moot. Dkt. #125. For the reasons set forth below, the Court disagrees with Plaintiffs and now GRANTS Defendants' motion to dismiss.

## II. BACKGROUND

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 1

As noted in the Court's previous Orders in this matter, this case arises from the sale of Black Rock Cable ("Black Rock") and questions surrounding whether certain payments from Defendants to Plaintiffs prior to the sale were loans, gifts or investments into that company. Dkt. #1.

Black Rock was incorporated in Nevada but operated exclusively in Washington, with its headquarters and principal place of business in Bellingham, WA. Dkt. #49 at ¶ 3. Although Black Rock began as a cable TV provider, the company abandoned that aspect of its business in 2002. *Id.* at ¶ 4. By 2003, Black Rock's business was based on building, owning and operating its own fiber optic network in Bellingham, WA. *Id.* Between 2004 and 2006, Black Rock expanded into Whatcom County, WA, Skagit County, WA, and Snohomish County, WA. *Id*.

As Black Rock rapidly expanded, it funded that expansion with its own revenue and through a line of credit at a local bank. *Id.* at ¶ 5. In 2007, Black Rock began exploring alternative ways of financing. *Id.* at ¶ 6. In September 2007, Plaintiff Robert Warshawer, who was also a shareholder and member of the Board of Directors of Black Rock, personally loaned the company $700,000. *Id.* at ¶ 7. Mr. Warshawer raised that money by borrowing it from family members, including Defendants Nancy and Rick Tarnutzer. *Id.*

According to Defendants, in May or June of 2007, Plaintiff Kim Warshawer (who is Defendant Nancy Tarnutzer's daughter and Defendant Rick Tarnutzer's sister) was visiting in California and revealed to Mr. Tarnutzer that Black Rock was in serious financial trouble. Dkt. #6 at ¶ ¶ 2-3. Mr. Tarnutzer, believing that his sister's husband would be successful in turning the business around, decided to invest in Black Rock. *Id.* at ¶ 4-5. Accordingly, he sent a check to Plaintiffs in the amount of $100,000, marking the check with the notation "Black Rock Cable Inv." *Id.* at 5-6 and Ex. A. Mr. Tarnutzer asserts that the notation "Inv." reflected

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 2

the word "investment." He further asserts that he provided a note with the check stating that it was an investment. *Id.* at ¶ 6. Mr. Warshawer subsequently cashed the check. Plaintiffs characterize the payment as a loan that they have attempted to repay, asserting that Mr. Tarnutzer never directly invested in Black Rock. Dkt. #10 at ¶ 4.

From 2007 to 2012, Black Rock continued to operate successfully. *Id.* at ¶ 10. In November of 2012, the Black Rock shareholders approved a merger between Black Rock and WHD Black Rock, LLC ("WDHBR"). *Id.* The Black Rock shareholders received approximately $30 million in merger proceeds at closing. Dkt. #48 at ¶ 3. Since then, the shareholders have received approximately $5 million in additional distribution of merger proceeds. *Id.*

In November of 2013, after learning of the sale, Mr. Tarnutzer attempted to obtain a return on his $100,000 "investment," alleging that he was owed approximately $5 million. Dkts. #13, #18, Ex. G and #49 at ¶ 11 and Ex. B. When his efforts to collect the money were unsuccessful, his attorney wrote a letter to WDHBR's parent company, Wavedivision, providing notice of the dispute. Dkt. #18, Ex. G. In response, Wavedivision held more than $3 million in escrow from distribution to Black Rock pending resolution of the dispute.[1] Dkt. #10 at ¶ 9.

On June 6, 2014, Mr. Tarnutzer filed a lawsuit against the Warshawers, Black Rock Cable and Wavedivision in Orange County Superior Court in California. Dkt. #5, Ex. B. The same day, Robert Warshawer filed the instant lawsuit in Washington, in Whatcom County Superior Court, against Rick Tarnutzer and Nancy Tarnutzer. Dkt. #5, Ex. C. The Washington

---

[1] The Court has since ruled that Defendants were not shareholders of Black Rock when it merged with WDHBR in November 2012, that all claims against the former Black Rock shareholders were dismissed with prejudice, and that all claims by Rick or Nancy Tarnutzer against the $3 million of Black Rock Merger proceeds in escrow were dismissed with prejudice. Dkt. #63.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 3

case was subsequently removed to this Court. Dkt. #1. The Tarnutzer Defendants then moved for a transfer to the Central District of California for consolidation with their "first-filed" case. Dkt. #4. This Court deferred the motion to transfer, and stayed this case pending further proceedings in California. Dkt. #8. On November 10, 2014, the parties notified this Court that the California action had been dismissed, and asked the Court to lift the stay and allow the matter to proceed. Dkt. #21. The Court did so on November 25, 2014. Dkt. #25.

This case has since been proceeding through the normal course of litigation. In November of 2015, Plaintiffs moved for an order compelling Defendants to produce certain financial documents in discovery. Dkt. #80. Defendants opposed the motion, arguing in part that the documents were protected by the privacy provision of California's state constitution. Dkt. #82. Defendants also moved to strike a settlement letter between the parties that Plaintiffs had offered as an Exhibit in support of their motion to compel. *Id.* On December 2, 2015, the Court granted Plaintiffs' motion, and directed Defendants to produce the financial documents at issue. Dkt. #86. The Court rejected Defendants' privacy argument, explaining:

> The law cited by Defendants is inapposite. Since the decision in *Erie R.R. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938), federal courts in diversity cases apply state substantive law and federal procedural law. *Feldman v. Allstate Ins. Co.,* 322 F.3d 660, 666 (9th Cir. 2003). Generally, evidentiary rulings are procedural in nature, unless the state evidence rules at issue are "intimately bound up" with the state's substantive law at issue. *Id*. The discovery questions here are not intimately bound to the substantive law. Therefore, the state law Defendants cite to support their argument does not apply.

Dkt. #86 at 11.

Likewise, the Court denied Defendants' motion to strike:

> As an initial matter, the Court DENIES Defendants' motion to strike Exhibit 3 to the Declaration of Spencer Hall, which is a settlement communication from Defendants' counsel. Dkt. #82 at 8-9. Federal Rule of Evidence does not preclude all use of settlement communications.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 4

> Rather, it precludes the admission of evidence of settlement negotiations to prove liability. Fed. R. Evid. 408(a). The exhibit offered by Plaintiffs on this motion is not being used to prove liability on any of their claims, and therefore FRE 408 does not preclude it.

Dkt. #86 at 5.

Defendants then moved for reconsideration, arguing that the Court committed manifest error in rejecting their privacy argument and in denying their motion to strike. Dkt. #88. The Court denied the motion, noting that by Local Rule such motions are disfavored and Defendants neither demonstrated manifest legal error nor directed the Court to new facts or legal authority that they could not have presented in their prior response. Dkt. #92 at 2. With respect to the privacy argument, the Court stated that Defendants had not demonstrated manifest error. With respect to the motion to strike, the Court again found no demonstration of a manifest error, but also explained that even if the settlement letter had been stricken from the record, the Court's conclusion would have remained the same because a review of the Court's entire Order revealed that the letter was not material to the Court's conclusion that certain records should be compelled. *Id.*

Defendants then filed a Petition for Writ of Mandamus raising the same issues before the Ninth Circuit Court of Appeals. Dkt. #96. At the same time, Defendants sought an Order from this Court staying the enforcement of the Order compelling the production of financial records until the Court of Appeals has decided the Petition. Dkt. #95. This Court denied Defendants' motion for a stay, finding that it was not likely Defendants would succeed on the merits of their Petition and finding their alleged irreparable harm argument unpersuasive. Dkt. #101.

On March 8, 2016, the Ninth Circuit Court of Appeals dismissed the Petition for Writ of Mandamus, finding that "Petitioners have not demonstrated [] this case warrants the

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 5

intervention of this court by means of the extraordinary remedy of mandamus." Dkt. #104. The Court also dismissed a pending motion to stay this Court's discovery Order as moot. *Id.*

Plaintiffs' then filed a Motion for Modification of Case Schedule and Sanctions. Dkt. #102. Plaintiffs sought *inter alia* "coercive" monetary sanctions against Defendants. On March 23, 2016, the Court granted the motion, but declined to impose coercive sanctions. Dkt. #109. Instead, the Court dismissed Defendants' Counterclaims with prejudice and, although Plaintiffs did not request such a sanction, the Court directed Defendants' attorneys to pay Plaintiff's attorney's fees and costs for their role in violating the Court's prior discovery Order. *Id.* Defendants then moved for an Order vacating those sanctions, arguing that the Court must comply with due process procedures prior to imposing any such sanctions against counsel. Dkt. #110. The Court agreed and ultimately held an evidentiary hearing. Dkts. #123 and #128. As a result of that hearing, the Court vacated sanctions against defense counsel, but retained that portion of its prior Order dismissing all of Defendants' Counterclaims with prejudice. Dkt. #129.

Defendants have since filed the instant motion to dismiss, and Plaintiffs have filed a motion for sanctions for Defendants' failure to produce Ms. Tarnutzer for a deposition. Dkts. #124 and #126. Both of those motions are addressed herein.

### III.   DISCUSSION

**A. Actual Case or Controversy**

Defendants move to dismiss this matter on the basis that it no longer presents an actual case or controversy between the parties. Dkt. #124 at 3-4. Plaintiffs' only remaining claim arises under Count 1 of their Amended Complaint, wherein they seek a declaration determining whether any balance due on the loan from Nancy Tarnutzer is their liability, and the amount

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 6

due, if any. Dkts. #124-1 and #125 at 12. Plaintiffs bring their claim pursuant to the Declaratory Judgment Act. That Act provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "a case of actual controversy" refers to the types of "cases" and "controversies" justiciable under Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007). "Absent a true case or controversy, a complaint solely for declaratory relief under 28 U.S.C. § 2201 will fail for lack of jurisdiction under Rule 12(b)(1)." *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1157 (9th Cir. 2007).

In *MedImmune*, *supra*, the Supreme Court summarized the difference "between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not" as follows: "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127. The Court also described a dispute that satisfies the case-or-controversy requirement as one that is "definite and concrete, touching the legal relations of parties having adverse legal interests," to the degree that the dispute is "'real and substantial'" and "admi[ts] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Id.* (quotation omitted). "[A] case or controversy must be based on a real and immediate injury or threat of future injury that is *caused by the defendants* – an objective standard that cannot be met by a purely

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 7

subjective or speculative fear of future harm." *Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1339 (Fed. Cir. 2008) (emphasis in original).

Defendants argue that they no longer have any monetary claims on the alleged loan from Nancy Tarnutzer because all of the Counterclaims were dismissed as sanctions. Dkt. #124 at 5. Defendants therefore argue that there is no longer any controversy because Plaintiffs are "no longer legally obligated to repay . . . Nancy Tarnutzer's Loan." Dkt. #124 at 4. In other words, Defendants allege that Plaintiffs' claims are now moot, and therefore there is no longer any need for declaratory relief.

> The "test for mootness in the context of a case, like this one, in which a plaintiff seeks declaratory relief . . . is 'whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1174-75 (9th Cir. 2002) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 85 L. Ed. 826, 61 S. Ct. 510 (1941)). Stated another way, the "'central question'" before us is "'whether changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief.'" *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 925 n.4 (9th Cir. 2000) (quoting 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3533.3, at 268 (1984)).

*Gator.com Corp. v. L.L. Bean, Inc.*, 398 F. 3d 1125, 1129 (9th Cir. 2005).

In this case, Plaintiffs have alleged that Nancy Tarnutzer loaned them $100,000 in June of 2007. Dkt. #124-1 at ¶ 8. Plaintiffs further allege that the loan was expected to be repaid in a specified amount of time, with at least 7.5% interest per year. *Id.* at ¶ 9. Although not stated in the Amended Complaint, Plaintiffs contend that the loan has been repaid by their agreement to allow Ms. Tarnutzer to live rent free in a house that they own, in which she has been living since at least 2014. Dkt. #125 at 3. They seek declaratory relief now as to liability on the loan and the amount of such liability, if any. Dkt. #124-1 at ¶ 16.

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 8

In her Counterclaims, which have since been dismissed, Ms. Tarnutzer acknowledges that she made a loan to Plaintiffs. Dkt. #37 at ¶ 63. She does not agree with the terms of the loan alleged by Plaintiffs. *Id.* at ¶ ¶ 63 and 64. She asserted that the loan has not been repaid. *Id.* at ¶ 65. Ms. Tarnutzer then alleged a number of damages and sought relief for the alleged failure to repay the loan. Dkt. #37 at ¶ ¶ 61-87. Ms. Tarnutzer has also submitted a Declaration to this Court stating that the house provided to her by Plaintiffs was a gift to her, not repayment for any loan. Dkt. #42 at ¶ 11. She also stated that Plaintiffs have since asked her to pay rent for the house, and later asked her to vacate the house after this lawsuit began. *Id.* at ¶ ¶ 11 and 12 and Exs. D and E thereto. There is no dispute that Ms. Tarnutzer continues to live in the house as of this date. Dkt. #125.

The Court now agrees with Defendants that the dismissal of their Counterclaims "wholly eviscerated the dispute that prompted" Plaintiffs to bring this suit, and therefore Plaintiffs' request for declaratory relief no longer gives rise to a live case or controversy. *Gator.com*, 398 F.3d at 1131. With the dismissal of her Counterclaims, Ms. Tarnutzer can no longer claim that repayment of her loan was breached in any manner, or that the house in which she lived rent free was a gift rather than repayment of the loan. These disputes were laid to rest with the dismissal of her claims. Thus, there is no longer any legal basis for Ms. Tarnutzer to seek monetary relief against Plaintiffs pertaining to the June 2007 loan, and there is no reason for this Court to declare whether any liability for the June 2007 loan is owed by Plaintiffs.

Plaintiffs assert that this Court should continue to hear this matter because Ms. Tarnutzer continues to reside in the house purchased by Plaintiffs. However, Plaintiffs do not discuss the house at all in their Amended Complaint. *See* Dkt. #124-1. They do not make any allegations that the house was provided to Ms. Tarnutzer as repayment for any loan, nor do they

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS
PAGE - 9

make any allegations with respect to the house and Mr. Tarnutzer. Even if those allegations had been made, there is no basis for Ms. Tarnutzer to dispute that the house was provided to her in repayment for the loan because her loan claim has been dismissed with prejudice. Further, it appears the relationship between Ms. Tarnutzer and Plaintiffs, beside being familial, is one of landlord/tenant, and any dispute as to her continued residence in the house is a matter left for the parties to work out among themselves or in the appropriate landlord/tenant court. Accordingly, Plaintiffs simply have not demonstrated any live case or controversy existing in this matter.

### B. Leave to Amend

Plaintiffs request an opportunity to amend their Complaint again. Dkt. #125 at 12. Ordinarily, leave to amend a Complaint should be freely given following an order of dismissal, "unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987); *see also DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) ("A district court does not err in denying leave to amend where the amendment would be futile." (citing *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 296 (9th Cir. 1990)). Here, the Court concludes that granting leave to amend would be futile. The Court can conceive of no possible cure given the status of Defendants' Counterclaims as discussed above.

### C. Plaintiffs' Motion for Sanctions

Plaintiffs have moved this Court for sanctions against Defendants for their continued failure to produce Ms. Tarnutzer for a deposition in this matter. Dkt. #126. Given the above dismissal of Defendants' claims, the Court finds Plaintiffs' motion to be moot.

//

## IV. CONCLUSION

Having reviewed the relevant pleadings, the declarations and exhibits attached thereto, and the remainder of the record, the Court hereby finds and ORDERS:

1. Defendants' Motion to Dismiss (Dkt. #124) is GRANTED for the reasons discussed above.
2. Plaintiffs' Motion for Sanctions (Dkt. #126) is DENIED AS MOOT.
3. This matter is now CLOSED.

DATED this 20th day of July 2016.

*[signature]*

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE